FILED IN MY OFFICE
DISTRICT COURT CLERK
11/19/2014 3:10:54 PM
STEPHEN T. PACHECO
Jorge Montes

STATE OF NEW MEXICO
COUNTY OF SANTA FE
FIRST JUDICIAL DISTRICT COURT

CASE NO.: D-101-CV-2014-02456

ANDRAS SZANTHO, as the personal
representative of THE ESTATE OF
MICHEAL CAMPBELL, deceased and
BRENDA CAMPBELL

    Plaintiffs,

v.

TRISTATE CAREFLIGHT, LLC, a limited liability company and
MARLA HARDY,

    Defendants.

### COMPLAINT FOR WRONGFUL DEATH AND LOSS OF CONSORTIUM

1. Andras Szantho is the personal representative of the Estate of Micheal Campbell, deceased.

2. TriState CareFlight, LLC ("TriState") is a limited liability company with a principal place of business in Santa Fe, New Mexico and which conducts business in New Mexico.

3. TriState can be served with process through the Secretary of State because its New Mexico registered agent, Thomas Hoover, is no longer with the company and TriState has not updated its agent for service of process.

4. Marla Hardy, upon information and belief, is the base manager and regional director for Southern New Mexico, including the TriState CareFlight Artesia base. Marla Hardy is a New Mexico resident.

1

**EXHIBIT B**

5. On January 8, 2014, Micheal Campbell went to the Artesia General Hospital emergency department. Mr. Campbell was experiencing fever and difficulty breathing.

6. During the stay at Artesia General Hospital, the physician determined that Mr. Campbell needed transfer to a facility that could provide a higher level of care.

7. During the hospitalization, Mr. Campbell was placed on a BIPAP machine to help with his breathing. Once on the BIPAP machine, Mr. Campbell's oxygen levels improved.

8. The physicians at Presbyterian Hospital in Albuquerque agreed to accept Mr. Campbell. Part of the reason that Mr. Campbell was sent to Presbyterian Hospital in Albuquerque is that closer facilities did not have beds.

9. The transfer from Artesia General Hospital to Presbyterian was provided by TriState CareFlight via helicopter transport. According to the documentation signed by Dr. Matthew Foster, the transferring physician, "The patient has been stabilized such that, within reasonable medical probability, no material deterioration of the patient's condition is likely to result from transfer."

10. Dr. Foster also documented that Mr. Campbell was required to have oxygen via BIPAP 14/6; FiO2 40% rate 12.

11. Before transfer, Dr. Foster was satisfied that Mr. Campbell was stable and that with appropriate medical treatment during transfer, his condition would not worsen.

12. According to the flight records, the TriState CareFlight service arrived on scene at 6:27. The first contact with Mr. Campbell was 6:35 and the TriState CareFlight left at 7:35.

13. Despite clear orders from Dr. Campbell, TriState administered oxygen via CPAP and administered the oxygen at a lower concentration than ordered. BIPAP provides different airway pressure during both the intake and output breathing cycles; CPAP only provides a single pressure.

14. According to the transport records, at 7:30 the ventilator was applied via CPAP 14/6 FiO2:40% rate 14 PEEP:6. Mr. Campbell was "maintained on 30% FiO2. Monitor on and functioning, just outside of Mountainair, NM flight crew ran out of O2 (oxygen), 1400 in the main and 2 portable O2 bottles".

15. The flight crew requested, "we land so we can get some O2 from a fire/EMS department." Immediately after the oxygen was depleted, Mr. Campbell's oxygen saturation levels dropped to 67. After the initial drop, temporary oxygen was provided via bag and valve mask, Mr. Campbell's O2 levels increased momentarily and then he went into cardiac arrest.

16. According to the records, the flight crew attempted to intubate Mr. Campbell and failed. The flight crew also determined that Mr. Campbell's "down time greater than 20 min and without O2 greater then [sic] 35 minutes. Patient death called at 0935."

17. A reasonable medical transport company and reasonable person in Marla Hardy's position as base manager have an obligation to have adequate supplies to provide necessary therapy to patients. Defendants failed in the obligation to provide the basic medical supplies needed when TriState ran out of oxygen during Mr. Campbell's transport.

18. A reasonable person in the position held by Marla Hardy has an obligation to ensure that policies and procedures are in place and are implemented in such a way that basic patient needs are met in every transport situation. This obligation also includes maintaining

3

adequate supplies, adequate training, and adequate staffing. TriState CareFlight failed to meet basic patient needs.

19. A reasonable medical transport company has an obligation to obtain informed consent from patients that it intends to transport. The obligation includes the need to inform regarding risks, benefits and alternatives to a helicopter transport. TriState CareFlight failed to obtain such consent.

20. TriState CareFlight, failed to have appropriate policies and procedures in place that ensured the basic needs of Micheal Campbell were met including supplemental oxygen.

21. Defendants were negligent in the care provided to Micheal Campbell.

22. Had the TriState CareFlight helicopter been properly equipped with a sufficient supply of oxygen for the duration of the flight, Mr. Campbell would not have died during transport.

23. Due to Defendants' negligence, Micheal Campbell unnecessarily died during transport from Artesia to Albuquerque.

24. For the reasons set forth above, Plaintiffs ask for judgment that Defendants were negligent in their care and treatment of Micheal Campbell and that such negligence was the cause of Mr. Campbell's damages and his death. Additionally, TriState CareFlight was negligent in the manner in which it implemented policies and procedures regarding supplemental oxygen.

25. The plaintiff also seeks punitive damages against TriState CareFlight for conscious disregard of Mr. Campbell's health and safety. By failing to determine whether enough oxygen was onboard for Mr. Campbell's flight, failing to have adequate equipment on board, and by failing to properly train its agents and employees, the defendants exhibited a conscious disregard for his health, safety and welfare. Such conscious disregard gives rise to

punitive damages. Additionally, the cumulative conduct of TriState CareFlight's employees and agents demonstrated a conscious disregard for the health and safety of Micheal Campbell. Such corporate disregard demonstrates a corporate indifference and recklessness.

26. Punitive damages are also warranted because TriState CareFlight, through its agents and employees including Marla Hardy, put its own interest ahead of the health and safety of patients. TriState CareFlight encouraged a program that overused costly helicopter transport, misrepresented the risks and exaggerated the benefits and then put patients at risk by placing them in a stressful environment with minimal or no health benefits. TriState CareFlight's placement of profits ahead of patient safety was and is reckless and resulted in Micheal Campbell's death.

27. Brenda Campbell was Micheal Campbell's wife and has suffered loss of companionship and other damages consistent with New Mexico law regarding a spouse's loss due to the wrongful death of her husband.

28. For this claim, Plaintiff Andras Szantho, as wrongful death personal representative, asks for compensatory damages as are appropriate under New Mexico law for wrongful death, for punitive damages, and for loss of consortium damages for Brenda Campbell.

WHEREFORE, Plaintiffs request the following relief against TriState CareFlight:

a. Award of compensatory damages as provided under New Mexico law;

b. Award of punitive damages as appropriate;

c. An award of pre- and post-judgment interest on any amounts recovered;

d. Such other and further relief as the Court may deem appropriate under the circumstances.

5

Respectfully submitted,


By:    /s/ Lee R. Hunt
      Lee R. Hunt
      1640 Old Pecos Trail, Suite D
      Santa Fe, New Mexico 87505
      (505) 954-4868
      lee@leehuntlaw.com