IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

ANDRAS SZANTHO, as personal
representative of THE ESTATE OF
MICHEAL CAMPBELL, deceased and
BRENDA CAMPBELL,

            Plaintiffs,

v.                                  No.:   1:14-cv-01156-LH-KK

TRISTATE CAREFLIGHT, LLC, and
MARLA HARDY,

            Defendants.

## MOTION TO COMPEL

Pursuant to Federal Rules of Civil Procedure 26(a) and 37, and D.N.M.LR-Civ.26.6 and 37.1, Plaintiff respectfully requests that the Court compel Defendant to produce documents and respond to interrogatories. Counsel made a good faith effort to confer as required by D.N.M.LR-7.1(a) with opposing counsel and counsel declined to confer on the motion to compel issues. Additionally, pursuant to D.N.M.LR-37.1(a), all relevant discovery requests and responses are attached to this Motion.

    **I.**        **Counsel Attempted to Comply with Local Rules regarding the Duty to Confer.**

This Court held a scheduling conference on March 4, 2015. During the scheduling conference, the Court asked whether the parties had any discovery disputes that could be addressed. Counsel for the Plaintiff informed the Court that certain documents were withheld based upon Peer Review Privilege assertions and that counsel did not agree that the documents

should be withheld. Counsel also informed the Court that he would attempt to work with the defense before filing any motions. During the Scheduling Conference, counsel left with the understanding that the parties would discuss the discovery concerns.

Following the March 4, 2015 conference, counsel contacted opposing counsel the next day, March 5, and made sure to include both counsel for the defense and their legal assistants. The correspondence addressed the same issue that had been raised the day before - the discovery dispute. Counsel for the defense sent earlier correspondence that day via email, which is why Plaintiff's counsel sent his request via email. The email correspondence also requested deposition dates for various witnesses and set out a general list of the initial witnesses who will be deposed. *See Ex. 1, March 5, 2015 email correspondence.*

Opposing counsel did not respond to the email on March 5 and did not contact Plaintiff's counsel on March 5. Instead, on Friday afternoon, defense counsel responded to the correspondence stating that the deadline for filing objections had run the day before, March 5, and that they were "not optimistic" that the clients would agree to an extension. *See Ex. 2.*

Plaintiff's counsel was in depositions on Friday and did not receive the email until near 4:00 pm on Friday. Plaintiff's counsel immediately called to understand whether defense counsel was unwilling to confer on the discovery and instead was asserting that the deadline had passed the day before. Opposing counsel stated that they would confer with their clients, but since it was late in the day, the 'status quo' would be maintained until they could get a definitive answer from their clients.

Today Plaintiff's counsel was informed that the clients would not agree to discuss the discovery and instead instructed counsel to assert that the deadline for filing objections had passed on March 5, the date defense counsel did not respond. Based upon the agreement among counsel that the status quo was maintained, this motion should be treated as if it were filed on March 6.

Plaintiff requests that this Motion to Compel be considered timely and be addressed on the merits for a number of reasons. At no point during the initial scheduling conference did opposing counsel raise the issue of the 21-day deadline. Discovery disputes were raised and counsel for the Plaintiff understood that there was an agreement that counsel would confer on these issues before jumping to a motion to compel. Indeed, the Local Rules require that counsel confer, which counsel started to do at the Scheduling Conference and continued the next day, March 5. Therefore, Plaintiff complied with D.N.M.LR-26.6.

More troubling is that the defendant intentionally delayed responding to the March 5 request to confer until they thought that the deadline expired. Had counsel responded on March 5 that he had been instructed not to discuss the issues and not to agree to extend the 21-day deadline, then Plaintiff's counsel would have filed this Motion to Compel on March 5. Instead, waiting to respond the following day, late on a Friday afternoon and informing counsel that they believed the deadline had run the day before and they would not extend the deadline, is exactly the type of gotcha litigation tactics that are distasteful and that often make the process far more difficult than necessary. Litigation is an adversarial field and counsel often disagree. Unfortunately, counsel are the ones often left to do the bidding of clients. In this instance, based upon previous interactions with defense counsel, which have been impeccable, we are likely dealing with timing issues and a refusal to confer, because a client that will never have to stand before the Court has refused to allow the lawyers to do what is appropriate given the facts.

A party should not be permitted to take advantage of the rules when their own conduct results in a Motion to Compel that is filed a day late. This issue would be different if the scheduling conference had not occurred, if Plaintiff's counsel never sent any correspondence, or if defense counsel had responded on March 5 that it would not extend the deadline. Instead, Plaintiff's counsel thought the parties were working together and never imagined that no response was received on March 5 so that the deadline could be used as a shield from legitimate discovery. As set forth in D.N.M.LR-26.6, the Court may extend the 21-day period for a motion to compel. Good cause exists to extend the deadline. To the extent that the Court deems necessary, any time over the 21-day period should be enlarged based upon Plaintiff's counsel's discussion of the issues at the scheduling conference, to the correspondence sent on March 5, and due to opposing counsel's decision to not respond until he believed the deadline had passed.

## II.     Discovery is Broadly Construed in New Mexico Federal Court.

Fed.R.Civ.P. 26(b)(1) provides that discovery may be obtained "regarding any non-privileged matter that is relevant to any party's claim or defense." Relevancy is broadly construed for pretrial discovery purposes. As a general proposition, "[a] request for discovery should be allowed `unless it is clear that the information sought can have no possible bearing' on the claim or defense of a party." *In re Urethane Antitrust Litigation*, 261 FRD 570, 573 (D. Kan. 2009). When the discovery sought appears relevant, the party resisting the discovery has the burden to establish the lack of relevance by demonstrating that the requested discovery (1) does not come within the broad scope of relevance as defined under Fed.R.Civ.P. 26(b)(1), or (2) is of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure. *Hammond v. Lowe's Home Ctrs.*, Inc., 216 FRD 666, 670 (D. Kan. 2003).

The question of relevancy naturally "is to be more loosely construed at the discovery stage than at the trial." 8 Charles Alan Wright et al., Federal Practice and Procedure § 2008, at 99 (2d ed.1994). "[A] party resisting discovery on the basis that a request if overly broad has the burden to support its objection, unless the request is overlybroad on its face." *General Electric Capital Corp. v. Lear Corp.*, 215 FRD 637, 640 (D. Kan. 2003). The scope of permissible discovery is construed broadly so as "to achieve the full disclosure of all potentially relevant information." *Sanchez v. Matta*, 229 F.R.D. 649, 654 (D.N.M. 2004). Quite simply, Defendant TriState has failed to meet its burden in many respects and the Motion to Compel should be granted.

### III. Investigation Reports are Not Protected by the Review Organization Immunity Act.

In multiple places in the Answers to Interrogatories and Request for Production, Defendant responded with the following:

> **ANSWER:**
>
> TriState objects to this request on the grounds that it seeks the "findings" of an investigation which are protected work product, prepared in anticipation of litigation, attorney-client privileged information, privileged and protected peer review information, and/or, information immune from discovery under the Review Organization Immunity Act ("ROIA"), N.M.S.A. 1978, §41-9-1. Without waiving the stated objections, TriState did conduct an internal investigation related to the transportation of Mr. Campbell, which was prepared in anticipation of litigation, and for the purposes of peer review and evaluating and improving the quality of care, and reducing morbidity and mortality, and which is privileged and protected from discovery or disclosure, as set forth above. *See* TriState's privilege log, provided herewith.

*See Response to Request for Production No. 11*. *Ex. 3* are the relevant discovery responses and requests; *Ex. 4* is the privilege log.

The claimed protections from discovery of the Review Organization Immunity Act and work-product privilege are misused and inapplicable to this case.

5

### A.     The Review Organization Immunity Act Does Not Bar Discovery.

The evidence listed by TriState in its privilege log appears to be related to an internal investigation. An internal investigation has no bearing on Peer Review and withholding the document on that basis is wholly unsupported by New Mexico law.

The peer review protection Defendant asserts arises from the Review Organization Immunity Act (hereinafter ROIA), NMSA 1978 § 41-9-1 et al. (1979). Section 41-9-5 pertains to the confidentiality of records of a review organization, and states as follows:

> All data and information acquired by a review organization in the exercise of its duties and functions shall be held in confidence and shall not be disclosed to anyone except to the extent necessary to carry out one or more of the purposes of the review organization or in a judicial appeal from the action of a review organization. No person described in Section 4 [41-9-4 NMSA 1978] of the Review Organization Immunity Act shall disclose what transpired at a meeting of a review organization except to the extent necessary to carry out one or more of the purposes of a review organization or in a judicial appeal from the action of a review organization. **Information, documents or records otherwise available from original sources shall not be immune from discovery or use in any civil action merely because they were presented during proceedings of a review organization, nor shall any person who testified before a review organization or who is a member of a review organization be prevented from testifying as to matters within his knowledge, but a witness cannot be asked about opinions formed by him as a result of the review organization's hearings.**

NMSA 1978 41-9-5 (emphasis added). When a party invokes Section 41-9-5 to immunize evidence from discovery, the burden rests upon that party to prove that the information was generated **exclusively** for peer review and for no other purpose, and that opinions were formed **exclusively** as a result of peer review deliberations. If the evidence was neither generated by nor formed exclusively for or as a result of peer review, it is not immune from discovery. *Southwest Community Health Services,* 107 N.M. at 200, 755 P.2d at 44. The immunity has been recognized

6

in the context of the care and treatment of patients, and is deemed necessary to accurately analyze medical procedures and decisions so that errors may be corrected and patient care can be improved. *Weekoty v.U.S.,* 30 F.Supp.2d 1343 (D.N.M. 1998).

The incident report and investigation that Defendant seeks to shield from discovery is clearly not that which was intended for protection under NMSA 1978 41-9-5 or *Southwest Community Health Services*. Defendant has not met the burden necessary to protect these items from discovery. Defendant has not even asserted that the requested information was ever reviewed by a review organization in the first place, much less formulated exclusively as a result of such a review proceeding. Instead, Defendant has merely made a conclusory objection that does not immunize evidentiary material from discovery.

Mr. Campbell died on January 8, 2014, the audio recordings were created the next day and January 10. The investigation report states that it is undated. Under no circumstances could documents created the day after the incident be considered "data and information acquired by a review organization in the exercise of its duties and functions". Quite simply, all documents and material withheld are investigative documents that should be produced in discovery.

**B.      The Work-Product Doctrine Does Not Bar Discovery of the Incident Report or Audio Recordings.**

Defendant further objects to producing the incident report and recorded interviews claiming it was prepared in anticipation of litigation. If Defendant seeks to withhold this document based upon the work-product doctrine, it has failed to meet its burden. Mr. Campbell died on January 8, 2014, the audio recordings were created the next day and January 10. These are not work-product material, they are investigative material.

The work-product doctrine is not a privilege, but an immunity protecting from discovery documents and tangible things prepared by a party or its representative in anticipation of litigation. *Hartman v. Texaco,* 123 N.M. 220, 225, 937 P.2d 979, 984 citing NMRA 1-026(B)(4) (Because this is a removal case, state law provides the rule of decision and, therefore, state law governs the assertion of privilege. *See Fed.R.Evid. 501*. "The test should be whether ... the document can fairly be said to have been prepared or obtained because of the prospect of litigation ... the converse of this is that even though litigation is already in prospect, there is no work product immunity for documents prepared in the regular course of business rather than for purposes of the litigation." *Hartman* at 226. The party with the burden of persuasion "must demonstrate that litigation was the driving force behind preparation of each challenged document for work product privilege to apply." *Id*. at 225. The *Hartman* court held that graphs, maps, charts, spread sheets and data reports that were prepared by oil company's employees were not prepared in anticipation of litigation for *purposes of work product privilege,* despite affidavits stating that the documents were prepared because management was aware of the likelihood that litigation would occur following incidents. *Id*. at 228.  The fact that an incident happened resulting in a person's unnecessary death, and that the family might bring a lawsuit does not make the investigation privileged.

In the instant case, Defendant suggests, by its objections, that the internal investigation was conducted solely at the direction and request of counsel.  However, nothing in the records and indeed the timing of the investigation supports that counsel was involved in the interviews or the report of the investigation.  Rather, the investigation was done as part of the normal business when adverse events occur. "The primary purpose of reporting incidents and 'near misses' is to learn

from experience and to enhance the flow of information to identify problem areas and initiate appropriate preventative measures before harm occurs. Analysis is designed to protect the next patient and to create a safer patient environment by eliminating future risk." *Id*.

TriState's investigation is not the type of information that is intended to be afforded work-product protection. Although the report and interviews may be used by counsel, they do not become work-product protection because they have value to counsel.

This is analogous to the production of a hospital incident report as was addressed in *Knight v. Presbyterian,* 98 N.M. 523, 650 P.2d 45 (Ct. App. 1982). In that case, the plaintiff sought production of an incident report that Presbyterian hospital claimed was protected by the attorney work-product privilege. The Court held that statements obtained by a hospital employee from various persons involved in treating a patient are only considered to be attorney work product when they are obtained shortly after an incident that raises the possibility of litigation, *and are obtained for and on behalf of the hospital's attorney in anticipation of such litigation. Id.* at 525, 650 P.2d at 47. (emphasis added). Unless Defendant can prove that litigation was the driving force behind this report, it must produce the report.

## IV. Specific Objections and Requests to Compel.

In addition to the broad categories listed above, TriState has objected and failed to provide complete responses to numerous requests. The separate requests are set forth herein starting with the Interrogatories:

### INTERROGATORY NO. 7:

With respect to any agreement, or insurance, under which any person or entity may be liable to satisfy part or all of any judgment which might be entered in this action and/or be liable to indemnify or reimburse payments made to satisfy any such judgment, please identify the following:

(a) Name of each entity, including name of any insurer;

(b) Whether the coverage provided is primary or excess;

(c) The policy number and issuance date;

(d) The monetary limits contained in the policy, both per person and per occurrence; and

(e) If you are aware of any dispute regarding coverage, please describe the nature of the dispute and specify the basis for the insurer's reservation of rights or denial of coverage.

(f) Please state whether the insurance provides coverage for punitive damages.

TriState responded with an objection that it would not provide information for persons or entities that may be liable for the judgment. It also claimed that the information was more readily available from other sources. The problem is that it failed to identify these sources and Plaintiffs have no way to know who is responsible for judgments against TriState. Finally, TriState refused to answer whether it was insured for punitive damages. TriState is in the best position to answer this question and should be compelled to provide a complete response, which would include whether it is insured for punitive damages and whether it has identified ALL insurance policies that could provide insurance for this case, including any excess insurance policies.

### **INTERROGATORY NO. 8:**

Please state whether anyone acting on your behalf has secured or obtained, or has knowledge of, any non-privileged statement either oral, audio, or video, recorded or in writing, pertaining in any way to the Campbell transport.

TriState responded with a simple "No". Based upon the privilege log, we know that interviews were conducted and that TriState has possession of those recordings. TriState's answer is less than forthright and it should be compelled to provide a complete response.

**INTERROGATORY NO. 10:**

Please identify any and all non-privileged documents or tangible items related to the occurrence of the instant made the basis of this lawsuit that are in your actual or constructive possession, custody, or control, including, but not limited to, medical records, X-rays, photographs, other films, slides, physical specimens, and provide the name, address, and telephone number of the custodian of each such item.

TriState objected to this response claiming it was overly broad. Such an objection on its own is not appropriate and TriState has not satisfied its burden to demonstrate that the request is overly broad on its face. The request is limited to material related to Micheal Campbell and the flight that is the basis of the lawsuit. Plaintiffs are unable to be more specific because Plaintiffs do not know which documents Defendant may have. The point of the request is to identify relevant and discoverable material. There are times when defendants obtain information about a plaintiff outside of the lawsuit. This interrogatory is intended to determine whether TriState has any such documents that it acquired on its own. It should be compelled to provide an accurate answer.

**INTERROGATORY NO. 11:**

Identify, by title and description, all policies, procedures, or guidelines that were in effect at TriState in January 2014. This includes policies, procedures or guidelines for clinical practice, nursing, maintenance, oxygen systems, and all such guides, policies, procedures, understandings or other such instructive material whatever the name used within TriState. In lieu of listing them in response to this Interrogatory, they documents may be produced pursuant to the requests for production.

TriState objected to providing information about its policies and procedures. As is typical in the responses, TriState objects that the request is overly broad and that it should not be forced to provide answers to broad requests. Plaintiffs are unable to identify TriState's policies and procedures and determine relevance, which is the purpose of discovery. Plaintiffs certainly take the position that all policies, procedures and guidelines that were in effect in 2014 should be produced.

**INTERROGATORY NO. 12:**

Please state whether any formal investigation has been made by any administrator, agent, servant, representative, and/or employee of TriState in connection with the medical care, treatment and transportation rendered to Micheal Campbell. If so, please state in detail its findings.

TriState's objection is addressed above in the section relating to Peer Review and work-product privilege. Plaintiff requests a complete answer.

**INTERROGATORY NO. 14:**

Please describe all runs or trips made by the unit that transported Micheal Campbell for the 24 hours before Mr. Campbell's transport, including the beginning and ending destination, the time for departure and arrival and the time that the unit was back in service. These records are also requested with appropriate redaction pursuant to the Requests for Production.

TriState objects to this request stating that material is not relevant and that it is overly broad. The over-breadth objection is simply a formulistic response. The request is limited to a 24-hour time period and limited to the unit that transported Mr. Campbell. The request is appropriately limited and the information should be produced. Additionally, any concern of confidentiality can be addressed with redaction, instead of a refusal to produce.

**INTERROGATORY NO. 18:**

Please list all instances for the time period January 1, 2012, through January 8, 2014, in which TriState provided transport for a patient from Artesia to a hospital in Albuquerque, New Mexico. Please include in this Interrogatory answer the time for each such transport, the reason for such transport and the individuals involved in the decision to transport.

TriState obejcts and refuses to answer based upon the scope of the request. At the core, TriState's refusal to discuss the discovery has necessitated filing this response with no ability to discuss the objections and to reach a compromise. Past times for transport between Artesia and Albuquerque are relevant to this case and Plaintiff is entitled to this information. The form that the response takes is likely open for discussion. However, the complete refusal to answer is inappropriate.

**INTERROGATORY NO. 20:**

Please describe who owns TriState CareFlight, LLC and state its gross revenue and net worth for 2013. For net worth, please state it as of December 31, 2013.

TriState objected to this response and refused to answer this request. The information is relevant and important at all stages of litigation. The claim that such information is not discoverable before making "a prima facie" showing of entitlement to punitive damages is unsupported. In this case, Micheal Campbell's death was caused by the failure to have enough oxygen for a flight. The insurance that has been produced appears to be inadequate. The net worth, revenue and the owners of TriState are relevant and discoverable. Indeed, this information is necessary for evaluating potential settlement. Introduction of evidence at trial is a different matter.

**INTERROGATORY NO. 21:**

Please describe how the decision was made to transport Micheal Campbell by helicopter on January 8, 2014. Please include who took the calls, whether the calls were recorded, who made the decision to use helicopter, what other transport services were available and the amount typically billed for transport to Albuquerque.

TriState refused to answer these questions claiming that the information is available from other sources. TriState should be compelled to completely answer with the knowledge that it has. The interrogatory asked who took calls, meaning who at TriState was involved. In addition to the general refusal to answer, TriState also failed to answer this question. A complete answer should be compelled.

**REQUEST FOR PRODUCTION NO. 1:**

Produce all records regarding the transportation of Micheal Campbell in January 2014. This request includes medical records, flight records, computer generated logs of calls, phone/radio call records, and reports created after the event.

Plaintiff has attempted to be complete in the request for documents. TriState's response is vague about whether all documents have been produced. TriState should be compelled to answer this Request completely and to produce all documents in its possession.

**REQUEST FOR PRODUCTION NO. 2:**

Produce copies of all policies, procedures, guidelines or instructions in effect at TriState in January 2014.

As set forth above, TriState should be compelled to produce all policies, procedures and guidelines.

**REQUEST FOR PRODUCTION NO. 5:**

Produce all statements from any person, whether preserved in writing or recorded by tape or by some other form of electronic media, regarding the care and treatment of Micheal Campbell. This request specifically includes any recordings of radio calls, dispatch calls, 911 calls or any other such recordings, i.e. it is not simply a request for recorded statements.

The objection to work product is addressed above and should be wholly rejected. Moreover, throughout the objections TriState misuses the objection that material is available from other sources. TriState should not be permitted to hide behind this objections and should be compelled to provide a complete response.

**REQUEST FOR PRODUCTION NO. 9:**

Please provide a copy of any and all documents relating to starting the Artesia base, including documents relating to licensure or certification, promotional material, documents relating to the services provided, and any other documents relating to the establishment of the base.

The Artesia base is at the heart of the issues in this case. The problems that lead to Micheal Campbell being deprived of oxygen started with the Artesia base. Complete discovery on the opening of the base, all the preparations and licensure, certification material is highly relevant and TriState should be compelled to provide a complete response.

**REQUEST FOR PRODUCTION NO. 11:**

Provide a copy of all reports, memoranda, incident reports, investigative reports, status reports, or correspondence or any other documents that relate to the care, treatment or transportation of Micheal Campbell in January of 2014, or the investigation/review of the care provided.

This request was addressed above and TriState's objection should be rejected and the documents produced.

**REQUEST FOR PRODUCTION NO. 19:**

Please produce all documents detailing maintenance, repair and purchase, including maintenance logs or other documentation relating to the Unit used in the Campbell transport. Based upon information in the record, this unit was 605CF Koala 119.

In a case involving an issue where a helicopter ran out of oxygen, the maintenance and repair records are clearly relevant and should be produced. The request is limited to the specific helicopter in this case and all material should be produced.

**V.     Complete and Unredacted Personnel Files Should be Produced.**

Defendant has taken the position that certain portions of the personnel file should not be produced, including not producing anything relating to Marla Hardy. We believe that confidentiality and production are separate issues. The personnel files are highly relevant to the claims presented in this case. Defendant should be ordered to produce all portions of the personnel files including Marla Hardy's file that contain relevant information.

**CONCLUSION**

Plaintiff requests that this Court consider the issues on the merits and compel answers to complete discovery.

Respectfully submitted,

By: __/s/ *Lee R. Hunt*_____
    Lee R. Hunt
    1640 Old Pecos Trail, Ste. D
    Santa Fe, New Mexico 87505
    P: (505) 954-4868
    F: (505) 819-0022
    lee@leehuntlaw.com

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on the 11th day of March 2015, I filed the foregoing electronically through the CM/ECF system, which caused the parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing.

    __/s/ *Lee R. Hunt*_____
    Lee R. Hunt